WILLIAM SLOAN, Appellant, *v.* HENRY PETRIE, Appellee.

### APPEAL FROM KANE.

A check on a banker, to be paid in depreciated currency, is not a good tender at a place designated, when the person to receive it, is not present to object or accept it.

A tender must be kept good, and ready to be delivered, within a reasonable time after the acceptance of it is signified.

THIS was an action of ejectment, the plaintiff claiming to be possessed as of his own demesne in fee simple, of a certain tract of land, known as the mill lot of Hubbard's addition to the village of Algonquin, according to the plat of said addition, as recorded in the recorder's office in McHenry county.

The declaration is in the usual form.    Plea, not guilty.

On the 4th day of December, 1852, the cause was submitted to the court for trial, the defendant was found guilty, and that the plaintiff has a fee simple estate in the premises described in the declaration.

On the 4th day of March, 1853, the cause was again submitted to the court, and the defendant found not guilty.

The judgment was set aside and a new trial awarded under the statute.

On the 9th day of November, 1853, this cause was tried again, and the jury found the defendant not guilty.

Plaintiff moved for and obtained a new trial, not under the statute.

On the 17th day of February, 1854, the cause was again tried by jury, and the defendant found guilty.

Defendant moved for and obtained a new trial.

At the May term, 1854, of the Kane Circuit Court, this cause was again tried by a jury, who found the defendant not guilty.

The plaintiff moved for a new trial, which motion was overruled by the court, MORRIS, Judge, presiding, to which ruling of the court the plaintiff excepted, and prayed an appeal. The plaintiff filed his bill of exceptions, which shows that on the trial of the above entitled cause, at said term of said court, the plaintiff introduced, and read to the jury, the following testimony, to wit:

A United States patent to William Allen, for the west fraction of the north-east fractional quarter, and the south-east fraction of the north-west fractional quarter of section thirty-four, in township forty-three north, of range eight east, being dated March 10th, 1843.

A general warrantee deed for same premises in the usual form, from William Allen and wife to Horace Hubbard, bearing date the 30th day of November, 1844.

A general warrantee deed for the above premises in question, from Horace Hubbard and wife to Zadoc Dexter, bearing date, April 20th, 1850.

A quit claim deed for premises in question, from Zadoc Dexter and wife to W. Sloan, bearing date, June 19th, 1851.

The plaintiff also introduced John Brush, who being duly sworn, testified, that in the year 1847 or 1848, he being the county surveyor of McHenry county, laid out and surveyed Hubbard's addition to the village of Algonquin; that he surveyed out the mill lot in said addition; that said mill lot is situated on the north-east fraction of the north-west fractional quarter of section thirty-four, in township forty-three, of range eight east of the third P. M., and that the defendant was before, on and after the first day of October, A. D. 1851, in possession of said mill lot.

The plaintiff then rested; the defendant then introduced the following testimony, to wit:

Charles Follansbee being duly sworn, testified to the court in relation to the contract next hereinafter introduced, that he, witness, as the agent of Zadoc Dexter, executed said contract; that the contract was brought to the witness by Alexander Dawson and the defendant, badly drawn up; that Dawson told the witness that there was a power of attorney from said Dexter to the witness, authorizing him to execute the contract, and according to the witness' best recollection, defendant said he had also seen it on the records of McHenry county. Dawson and defendant were not together when they told this, and the witness would not have executed, had he not been so informed, and supposed he had authority to do so; that the next fall the witness saw said Dexter, and told him about the contract and told him all he had done, and Dexter told him it was right, and to go on and receive the payments, and to keep an account of them, and the contract was also signed by the defendant, and he received the money indorsed on the contract, and retained it for money he had advanced to Dawson in improving the mill on the premises in question, of Dexter, and informed Dexter what he had done with the money, and Dexter said it was right. The defendant also, after proving the same, showed to the court the notice hereinafter mentioned, and therefore the defendant offered the following contract in evidence, to wit:

"Articles of Agreement, made this third day of May, in the year of our Lord, one thousand eight hundred and fifty, (1850,) between Zadoc Dexter, of the county of Jefferson, and State of New York, of the first part, and Henry Petrie, of the county of McHenry, and State of Illinois, of the second part. Witnesseth, that if the party of the second part shall first make the payments, and perform the covenants hereinafter mentioned on his part to be made and performed, the said

party of the first part, hereby covenants and agrees to convey and assure to the party of the second part, in a good and sufficient quit claim deed, the following described property, viz: all my right, title and interest in and to the property, lands, water and water power, contained in a certain deed from Horace Hubbard and wife, of the county of McHenry, and State of Illinois, to Zadoc Dexter, of the county of Jefferson, and State of New York, dated on the 20th day of April, A. D. 1850, and left for record in the recorder's office, the 2nd day of May, A. D. 1850, at 4 o'clock, P. M. For a more full description of the above mentioned property, see the above mentioned deed. And the said party of the second part, hereby covenants and agrees to pay to the said party of the first part, at the office of Charles Follansbee, in the city of Chicago, or any of the agents that the said party of the first part may direct, in said city, the sum of two thousand nine hundred dollars, ($2,900,) as follows, with annual interest thereon : the sum of forty dollars, ($40,) in hand paid, the receipt whereof is hereby acknowledged; the sum of four hundred and sixty dollars, ($460,) on or before the first day of July, A. D. 1850; the sum of eight hundred dollars, ($800,) on or before the first day of July, A. D. 1851; the sum of eight hundred dollars, ($800,) on or before the first day of July, A. D. 1852 ; the sum of eight hundred dollars, ($800,) on or before the first day of July, A. D. 1853, and pay all taxes, assessments or impositions that may be legally levied or impressed upon said property : and in case of failure of the said party of the second part, to make either of the payments, or perform any of the covenants on his part, the party of the first part shall have the right to declare this contract forfeited and determined, and re-enter and take possession, and to have and retain all payments that shall have been made on this contract. It is mutually agreed that all covenants and agreements contained herein, shall extend to and be obligatory upon the administrators and assigns of the respective parties.

In witness whereof, the parties to these presents, have hereunto set their hands and seals, the day and year above mentioned.

ZADOC DEXTER, [ SEAL.]

By C. FOLLANSBEE, his attorney in fact.

HENRY PETRIE, [ SEAL.] "

$300 00.                    " CHICAGO, 9th July, 1850.

Received on the above, three hundred dollars.

C. FOLLANSBEE,

Agent for Z. DEXTER, in fact."

And upon the back of said contract the following assignment, which is in the words and figures following, to wit:

"For a valuable consideration, to me in hand paid, the receipt whereof is hereby acknowledged, I assign all my right, title and interest to the within contract, to Stephen L Petrie, of Cleveland, Ohio.

WOODSTOCK, 30th of July, 1850.                    HENRY PETRIE."

To the introduction of which contract, the plaintiff, by his counsel objected, and the court overruled such objection, and admitted said contract in evidence, to the overruling of which objection and to the admission of said contract in evidence, the said plaintiff by his counsel excepted at the time.

Said witness, C. Follansbee, further testified to the court, that the witness was acquainted with the hand-writing of said Zadoc Dexter and of William Sloan, and had seen them write, and that the signature of the notice next hereinafter contained was in their proper hand-writing, and thereupon the defendant offered the writing or notice in evidence, to wit:

" *To Mr. Henry Petrie, of McHenry County, Illinois:*

Sir: You are hereby required to make payment of all money now due on contract signed by us, dated May 3rd, 1850, in relation to the sale of mill property at Algonquin, and pay before the hour of ten o'clock, on July 9th, 1851, to Mr. Charles Follansbee, of Chicago, Illinois, who is authorized to receipt for, and receive the money; if the money is not then paid, the contract will then be declared forfeited.                                          ZADOC DEXTER,

Dated this first day of July, A. D. 1851.                WM. SLOAN."

To the introduction of which notice as evidence to the jury, the plaintiff objected, and the court overruled such objection, and admitted such notice as evidence, to the overruling of which objection, and admitting said notice in evidence, the plaintiff at the time excepted.

The said witness then testified as follows:

On the evening of July 8th, 1851, the defendant came to my store, in Chicago, and said that he had had notice from Dexter and Sloan to pay me the money due on the mill contract, the next day, by ten o'clock, A. M., and that he was coming at that time to make the payment to me on the Dexter contract for the mill property. I told him I was not authorized to receive any money, and I could not take it, as I had been directed by Dexter not to receive any more money on the contract on his account; defendant said he did not care, he should tender me the money, in accordance with the notice, after the 8th of July, 1851. I never received any authority to receive money on the contract; the defendant went into possession of the mill under the contract, about the time of the date of the contract; he also testified that he had never been authorized by plaintiff to receive money on the contract, so far as he knew.

On the 9th day of July, 1851, the defendant came to my store between 11 and 12 o'clock, and said he had been in to pay me some money, I think he said some eleven or twelve hundred dollars; I told him I should like to see it, I would take it now. He said I was too late, I could not have it. On that morning, the 9th, I went from my store about 9 o'clock. I went on to South Water street, and just as I got my business done, a heavy shower came up and detained me, so that I did not go away to avoid receiving the money. I do not know when defendant received notice to pay the money to me, but the 8th I told de-

fendant I had received notice from Dexter not to receive any money on the contract. I received a letter from Dexter, sometime before the first of July, 1851, not to receive any more money on the contract on his account, as he had sold to plaintiff. Plaintiff brought me the letter from Dexter; I informed him of the contents of the same, at the time he brought it. I do not know that defendant showed me the notice he had received to pay the money, but he told me the contents of it on the 8th. The plaintiff never told me not to receive any money on the contract. I went up to the mill once to get some money of the defendant on his contract, it was in April or May, 1851; the defendant refused to make any payment; he seemed inclined not to pay any more then, and he said he should not pay any more on the contract. Often, when the defendant has been in my store, we have spoken of the contract, and after the $300 was paid, he said he should not pay any more on the contract, but this was in the spring of 1851, or prior thereto.

The defendant said he would not pay any more money on the contract. Dawson had not done as he agreed. Dawson had no authority to receive any money. Dawson has acted as my agent. On the 9th day of July, the defendant said he had been in to pay the amount due on the contract, when I replied to him that I would receive it. I was not laughing, I was serious, I meant what I said.

The witness being examined by the plaintiff, testified that he had seen the defendant write, and knew his hand-writing, and that the assignment on the contract, from defendant to S. L. Petrie, is in the hand-writing of the defendant, and also, that the following notice is in his hand-writing, to wit:

" *Mr. William Sloan:*

Sir—I received a notice from you yesterday, requiring me to make payment in full on a contract made between Zadoc Dexter and myself, the 3rd day of May, 1850, in regard to certain mill property, at Algonquin. I hereby wish to inform you, that I am not the owner of said property or contract, but that Stephen L. Petrie, of Cleveland, is. HENRY PETRIE."

W. B. Plato, and Glover and Cook, for Appellant.

J. F. Farnsworth, for Appellee.

Caton, J. The defense set up to this action of ejectment is a contract for the purchase of the premises by the defendant, from the assignor of the plaintiff below, under which it is claimed that Petrie took possession of the premises, and now rightfully holds them. The principal question in the case is,

whether the purchaser performed, on his part, so as to entitle him to the benefits of the contract and to retain possession under it, or whether he has forfeited the benefits of the contract by his non-performance. The principal evidence on this point is found in the testimony of Follansbee.

After proving the agreement by him, the defendant proved a notice which he received from Dexter, the vendor, and Sloan, a subsequent vendee or assignee of the premises, requiring the defendant below to pay the balance then due on the contract, to Follansbee, at his office in Chicago, on or before ten o'clock on the ninth day of July, 1851, and in default of such payment the contract would be declared forfeited. On the evening of the 8th of July, 1851, the defendant called on Follansbee and advised him that he had received such a notice, and that he should pay him the money according thereto. Follansbee answered him that he had no authority to receive the money, and should not receive it if tendered; that he had received notice from Dexter not to receive any money on the contract on his account, as he had sold the premises to Sloan. This notice was brought to the witness by Sloan at the time he bought the premises of Dexter. Sloan never told him not to receive money on the contract. The defendant told the witness the contents of the notice which he had received from Dexter and Sloan, to pay the money to the witness the next day. The witness, in the month of April previous, had called on the defendant for money due on the contract, which he refused to pay, and said he should not pay any more money on the contract.

On the 9th of July, Petrie called on the witness about two hours after the time appointed for the payment of the money, and said he had been there before to pay the money, but he was not in. The witness then told him he would receive the money, and he meant what he said, to which the defendant replied that it was too late, and that he could not have it.

The testimony of Richmond shows that Richmond & Co. loaned Petrie their check on Geo. Smith & Co. for the purpose of making the tender. With this check he went to Follansbee's store to make the tender, about ten o'clock on the morning of the ninth of July; that Follansbee was not in. They went away and returned some time after, and that he was still absent, when Petrie returned the check to Richmond & Co., and it was destroyed; that Richmond & Co.'s check was good for that amount of currency, which was about one per cent. below par, in specie.

The case, in fact, turns upon the sufficiency of this tender, and we are very clearly of opinion that it was not sufficient, or if originally sufficient, it was not kept good, and the benefit which might have been derived from it was lost, by refusing to

pay the money to Follansbe when he offered to take it. We are not aware of any case which has decided that a check on a banker, which is only good for depreciated currency which is one per cent. below par, is a good tender at a place designated, when the person to receive it is not present, and has no opportunity to object to the tender, on that account, nor are we, by any means, prepared to lay down such a rule. There are many cases which hold that a tender in bank bills which are at par, is good, if the person to whom the tender is made does not object to the tender on that account. But that is upon the principle of an implied waiver of the objection, by not relying upon it. But when the party is not present, and has no opportunity to urge the objection, he cannot be presumed to have waived it by his silence. But admitting the tender was originally sufficient, the money or check thereby became the property of the plaintiff, and the defendant was bound to retain it for him, and hold or place it in a safe place, whenever called for by him. Within two hours after the tender was made, and when the defendant first informed the agent that he had tendered the money, he offered to receive it, when the defendant absolutely refused to pay it, but said it was too late. This rendered his case no better than it would have been if no tender had ever been made. I would not be understood as saying that the defendant was bound to have the money in his pocket and to have produced it on the instant, for, under the circumstances, he was undoubtedly entitled to a reasonable time to go and get it where he might have deposited it. But this he did not offer to do, but absolutely refused to pay it at all, saying it was then too late. If it was too late then, it is too late now, and must ever be too late. If he was not entitled to it then, he never can be entitled to it, but must lose it. It must be remembered that we are in a court of law, deciding upon legal rights, with no discretionary powers to waive the element of time as unimportant, even if, under this contract, that could be done by a court of equity. We cannot order the money now to be paid or brought into court, and upon seeing that done, allow the defendant to retain the benefit of his contract. This is not a bill for the specific performance of the contract, where the rigorous principles of the law may be modified by the discretion of the court, but this is an action of ejectment, where legal rights can be alone considered. We have no doubt that the verdict was wrong, and a new trial should be granted. The judgment must be reversed and the case remanded.

*Judgment reversed.*